UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CRYSTAL R. BORKOWSKI, ) | CAUSE NO. 3:14-CV-269-CAN |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

On February 2, 2014, Plaintiff Crystal R. Borkowski ("Borkowski") filed a complaint in this Court seeking reversal of the Commissioner's final decision to deny her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Alternatively, Borkowski seeks a remand for further consideration of her applications. On July 24, 2014, Borkowski filed Plaintiff's Social Security Memorandum in support of her complaint. On October 31, 2014, Defendant Commissioner of Social Security ("Commissioner") filed a response asking the Court to affirm the decision denying benefits. This Court may enter a ruling in this matter based on the parties consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**I.  PROCEDURE**

On November 30, 2006, Borkowski filed applications for DIB and SSI with the Social Security Administration ("SSA")  pursuant to 42 U.S.C. §§ 416(i), 423 alleging disability beginning October 15, 2006. The SSA denied Borkowski's applications initially on May 29, 2007, and then again on November 26, 2007 after reconsideration was granted. Then on March 29, 2008, Borkowski filed a timely request for an administrative hearing. On October 21, 2009,

the hearing was held before an administrative law judge ("ALJ") and testimony heard. On March 9, 2010, the ALJ determined that Borkowski was not disabled and denied her applications for benefits. On October 3, 2011, after Borkowski filed a request for review of the ALJ decision with the Appeals Council, the Appeals Council determined that the ALJ's decision was not supported by substantial evidence and remanded the case back to the ALJ for a new hearing. On June 26, 2012, the hearing was held in which Borkowski appeared and testified along with an impartial vocational expert who also appeared. On August 27, 2012, the ALJ found Borkowski was not disabled at step five of the evaluation process. After the Appeals Council denied Borkowski's request for review, the ALJ's decision became the final decision of the Commissioner.

This action followed.

## II. RELEVANT BACKGROUND

Borkowski was born on October 28, 1968, making her 37-years old on the alleged disability onset date. Borkowski has earned a GED and also an associate's degree in business. She lives with her son and daughter. Prior to the alleged onset date, Borkowski worked as a community support specialist; a quality control technician; newspaper deliverer; waitress; and house cleaner.

At her hearing before the ALJ, Borkowski testified that she experiences widespread body pain that renders her bedridden more than twenty days in an average month. She testified that neck pain prevents her from using her arms for a full day. She also testified that she experiences fatigue, loss of balance, and the inability to use her hands for very long. In addition, Borkowski testified she suffers from anxiety and depression, including panic attacks and crying spells. Borkowski also claims she has had multiple nervous breakdowns.

Borkowski provided the ALJ with medical evidence that documented her visits to various doctors from October 30, 2006, up to the date of the hearing in in August 2012. The medical record and opinions show that Borkowski has been treated for degenerative disc disease of the cervical and lumbar spine, hepatitis C, mild carpal tunnel syndrome, anxiety and depression. Borkowski also suffers from arthritis and fibromyalgia, although the record is somewhat inconsistent as to the fibromyalgia diagnosis and the cause of the arthritis. Consistent throughout, however, are Borkowski's own subjective allegations of myriad physical and mental symptoms. Borkowski's chief physical complaint is widespread body pain, but she has complained of other symptoms such as loss of balance; fatigue; and an inability to perform physical activities like sitting, bending down, and using her legs. Borkowski's mental health complaints include snapping easily; feeling depressed and isolated; lacking motivation; and decreased concentration ability.

After the hearing, the ALJ issued a written decision reflecting the following findings based on the five-step disability evaluation prescribed by the Social Security Administration's ("SSA's") regulations. At step one, the ALJ found that Borkowski has not engaged in substantial gainful activity since October 15, 2006, the alleged onset date. At step two, the ALJ found that Borkowski has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; hepatitis C; mild carpal tunnel syndrome; anxiety; and depression. At step three, the ALJ found that Borkowski does not have an impairment or combination of impairments that meets or medically equals the severity of a listing. The ALJ then determined that Borkowski retained the residual functional capacity ("RFC") to perform less than sedentary work with the following limitations: occasionally climb stairs and ramps; cannot climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. No driving or

operating moving machinery or work in a hazardous environment; limited to simple, routine, repetitive tasks; limited to work requiring only simple decision making, no more than occasional and minor change in the workplace or work setting, and simple judgment.

At step four, the ALJ found that Borkowski is unable to perform any past relevant work. At step five, the ALJ found that considering Borkowski's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Based on these findings, the ALJ determined that Borkowski had not been disabled from October 15, 2006. After the Appeals Council denied Borkowski's request for review, the ALJ's decision became the final decision of the Commissioner for purposes of judicial review.

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Thus, substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kepple v. Massanari*, 468 F.3d 513, 516 (7th Cir. 2001).

A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.

*Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Minimally, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

### B. Disability Standard

To be entitled to DIB under 42 U.S.C. § 423 or SSI under 42 U.S.C. § 1381a, a claimant must establish that she is disabled. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 § U.S.C. § 423(d)(1)(A). The Social Security regulations provide a five-part test to determine whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.945[1] The steps are: (1) Is the claimant is engaged in substantial gainful activity? If Yes, the claimant is not disabled, and claim denied; if no, then; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and claim denied; if yes, then; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is disabled; if not, then; (4) Can the claimant perform her past relevant work? If yes, the claimant is not disabled, and claim denied; if no, then; (5) Can the claimant perform other work given the claimants residual functional capacity ("RFC"), age, education, and experience? If yes, the

---

[1] Since the SSI and DIB regulations are essentially identical, the court will refer only to DIB regulations throughout the order.

claimant is not disabled, and claim denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck*, 357 F.3d at 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**C.     Issues for Review**

This Court must ascertain, not whether Borkowski is disabled, but rather, whether the ALJ's RFC determination for Borkowski is supported by substantial evidence. Borkowski contends that the ALJ's opinion does not support her RFC determination because (1) the ALJ made an erroneous credibility determination as to her, her brother, and her mother, and (2) the ALJ failed to credit all of Borkowski's limitations. Each of these arguments is addressed in turn.

An individual's RFC demonstrates her ability to do physical and mental work activities on a sustained basis despite functional limitations caused by any medically determinable impairment(s) and their symptoms, including pain. 20 C.F.R. § 404.1545; SSR 96-8p 1996. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, third party witness reports, and any other relevant evidence. SSR 96-7p 1996. "Careful consideration must be

given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1512(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's work related activity, the ALJ must find that the claimant has no related functional limitations. *See* SSR 96-8p.

For the reasons discussed below this Court finds that the ALJ's credibility determinations are not patently wrong and the ALJ sufficiently credits Borkowski's limitations. Therefore, the ALJ's RFC determination is supported by substantial evidence.

    1.    <u>Credibility Determinations</u>

Borkowski contends that the ALJ made an erroneous credibility determination as to her subjective complaints of pain. Borkowski also argues that the ALJ failed to give weight to the opinions of Plaintiff's "siblings," a label that the Court construes to include Borkowski's brother and mother.

        a.    <u>Borkowski's subjective complaints</u>

In assessing a claimant's subjective symptoms, particularly pain, the ALJ must follow a two-step process. SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. *Id*. Second, after showing an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the

7

claimant's ability to work. *Id*. Whenever a claimant's statements about the symptoms and limitations of his impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id*. The ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it. *Carradine v. Barnhart,* 360 F.3d 751, 753 (7th Cir.2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary or the Secretary's designate, the ALJ. *Herr v. Sullivan*, 912, F.2d 178, 181 (7th Cir. 1990).

An ALJ's decision regarding a claimant's credibility must contain specific reasons for the finding on credibility, be supported by evidence in the record, and be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the ALJ gave to the claimant's statements and the reasons for that weight. SSR 96-7p. The ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of disability. *Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004).

Although a claimant for social security disability benefits can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). An ALJ is free to discount an applicant's testimony on the basis of other evidence in the record. *Johnson v. Barnhart,* 449 F.3d 804, 804 (7th Cir.2006). A discrepancy between reported pain and medical evidence is probative that the applicant may be exaggerating her condition. *Powers v. Apfel,* 207 F.3d 431, 435–36 (7th Cir. 2000). *see also* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1529(c).

8

Because an ALJ is in a special position to hear, see, and assess witnesses, her credibility determinations are given special deference and will only be overturned if they are patently wrong. *Shideler v. Astrue*, 2012 WL 2948539, at *4 (7th Cir. July 20, 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Here, in determining the credibility of Borkowski's testimony regarding the symptoms associated with her pain, the ALJ concluded that her medically determined impairments could reasonably be expected to cause the symptoms she alleged in her testimony. However, the ALJ found that Borkowski's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment." Doc. No. 12 at 34.

Notably, the ALJ did not totally discount Borkowski's testimony regarding how her symptoms affected her ability to perform certain activities. In his opinion, the ALJ indicated that Borkowski's allegations were "extremely difficult to credit," but ultimately gave her the "considerable benefit of the doubt," finding her to be substantially more limited than the State agency medical and psychological consultants did. Doc. No. 12 at 37. The ALJ credited Borkowski with greater limitations despite his stated reservations about inconsistencies between her allegations and the medical record.

In addition, the ALJ's conclusion to discount partially Borkowski's subjective complaints was made only after consideration of multiple factors, which the ALJ appropriately explained. Specifically, the ALJ discussed a lack of support for Borkowski's subjective complaints in the medical record, opinions of state agency medical consultants that tended to contradict her claims, and treatment notes that indicated Borkowski had no physical disability and had normal activities

9

of daily living. These types of evidentiary conflicts, where reasonable minds can differ, are precisely what the ALJ has the responsibility to decide. *See Herr*, 912 F.2d at 181. Moreover, the ALJ did not consider any one factor as the sole proof that Borkowski was not disabled, but rather considered each as evidence tending to show that Borkowski was not limited to the extent alleged.

Borkowski also asserts that the ALJ improperly drew a negative inference from Borkowski's decision not to undergo a diagnostic test for Charcot-Marie-Tooth ("CMT") disease that her neurologist Dr. Flipowicz recommended, citing *Shauger v. Astrue* in support. In *Shauger*, the court held that an ALJ must first explore the claimant's reason for the lack of medical care before drawing a negative inference. 675 F.3d 690, 696 (7th Cir. 2012) (*citing Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir.2008); *see also* SSR 96-7p. Nevertheless, the burden remains on the claimant to show that a medically determinable impairment exits. *See* 20 C.F.R. 404.1512(a). Here, Borkowski explains that she chose not to undergo the test because insurance did not cover it and she could not pay for it herself.[2]

The Court acknowledges that the ALJ drew a negative inference about Borkowski's subjective symptoms as they related to CMT when he noted that this particular test never occurred. However, the ALJ satisfied *Shauger* when, in support of this inference, he cited specifically to Borkowski's hearing testimony where she explained her reasons for not undergoing the test, including her inability to pay. Moreover, the impact of the ALJ's negative inference is lessened because, as the Commissioner suggests, it remains Borkowski's burden to show that a medically determinable impairment exists in the first instance. Borkowski's inability

---

[2]Though not material to the Court's outcome, the Court notes the actual cost of this diagnostic test is uncertain. In Borkowski's brief, she indicates this diagnostic test would cost $10,000.00, but Borkowski testified on the record at her hearing that the test would have cost only $3,000.00. Compare Doc. No. 19 at 12 to Doc. No.12 at 65.

10

to pay for a single test, especially when the record shows that she was able to get regular medical care, including other testing such as MRIs, a CT scan, and EMG testing during the relevant period does not excuse her burden. See Doc. No. 12 at 29-30.

In addition, Borkwoski's reliance on *Craft v. Astrue* is misplaced. In *Craft*, the ALJ neither questioned the claimant about his lack of treatment nor noted his inability to pay for regular treatment. *Craft*, at 539 F.3d at 679. In this case, however, the ALJ explicitly cited Borkowski's reasons for not undergoing the test in his decision and explained that Borkowski received regular medical care during this period, which included a bevy of other tests. More applicable is *Stahl v. Colvin*. In *Stahl*, the court held that the ALJ's negative credibility inferences are reasonable when the ALJ considers other explanatory information in the case record, such as the claimant's receiving other medical treatment during the relevant period, or inconsistencies between the claimant's allegations and the medical record. *See* SSR 96-7p; *see also Stahl v. Colvin*, 2015 WL 273371 at *12 (N.D. Ill. Jan. 20, 2015). Like the *Stahl* court, this Court finds that the ALJ's negative credibility inference here was reasonable because the ALJ considered other explanatory information in the case record in reaching his conclusion. *Id*.

In sum, the ALJ's assessment of Borkowski's credibility is supported by objective medical and other evidence in the record. Thus, the ALJ's credibility determination related to Borkowksi's subjective complaints was not patently wrong.

        b.      <u>Borkowski family's opinion evidence</u>

In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, a court considers such factors as the nature and extent of the relationship, whether

the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. SSR 06-03p; *see also Pogatetz v. Colvin*, No. 12 CV 4060, 2013 WL 6687940, at *12 (N.D. Ill. Dec. 17, 2013). Because the ALJ is in the best position to determine credibility of witnesses when assessing a claimant's entitlement to disability benefits, district court reviews that determination deferentially, and will overturn a witness credibility determination only if it is patently wrong. *Craft*, 539 F.3d at 668; *see also* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1529(c).

Here, the ALJ considered all the factors prescribed in SR 06-03p for this particular type of non-medical source evidence. The ALJ addressed the nature and extent of Borkowski's relationship to her brother Ivan Smith and her mother Martha Smith when he noted that by virtue of their family relationship, their testimony may be colored by affection for Borkowski and a natural tendency to agree with the symptoms and limitations that she alleges. The ALJ also considered whether this opinion evidence is consistent with the other evidence when he stated that their statements were not consistent with the preponderance of medical opinions and observations in this case. Further, the ALJ noted that the two witnesses were not medically trained to make exacting observations as to dates, frequency, types, and degrees of medical signs and symptoms. Despite the ALJ's clear rationale, Borkowski argues that he failed to give their opinions any weight, even though the ALJ only explained that he would not give them *significant* weight based on their inconsistencies with the medical evidence.

In sum, the ALJ's opinion reflects his consideration of all the factors prescribed in SSR 06-03p for this particular type of non-medical source evidence. As a result, his credibility determination was reasoned and supported. Thus, the ALJ's credibility determination as to Borkowski's brother and mother are not patently wrong and must not be disturbed.

2. <u>Consideration of Borkowski's Limitations</u>

Borkowski contends that the ALJ failed to credit all of her physical and mental limitations in the RFC. However, Borkowski's argument seemingly relists, *in toto,* her favorable medical history as it appears in the record without reference to the ALJ's analysis. Specifically, Borkowski's briefs say nothing about whether or not the ALJ considered any particular piece of evidence or the extent of any such consideration. As a result, the Commissioner suggests that this argument is undeveloped and waived. *See S.N.B. ex rel. Jordan v. Astrue*, No. 11-1519, 2013 WL 936552 (S.D. Ind. Mar. 11, 2013) (citing *Eherhart v. Sec'y of Health & human Servs.*, 969 F.2d 534, 537 (7th Cir. 1992).

While tempted by the Commissioner's invitation to ignore Borkowski's argument, the Court cannot do so. In her brief, Borkowski sufficiently outlines her argument that the ALJ failed to credit all of Borkowski's limitations in reaching his RFC determination. Specifically, Borkowski challenges the ALJ's attention to her physical complaints of pain in her neck and shoulders; shoulder weakness and stiffness; trouble with leg function and sitting down; fatigue and loss of balance; as well as her mental complaint of decreased concentration. Even after considering Borkowski's argument, however, the Court must affirm the ALJ's RFC determination.

The assessment of a claimant's RFC is a legal determination reserved to the SSA. *Diaz v. Chater,* 55 F.3d 300, 306 n. 2 (7th Cir.1995). When assessing what a claimant can do despite his limitations, the ALJ must consider the entire record, including all relevant medical and nonmedical evidence, such as the claimant's own testimony. *Id.* The ALJ's assessment of the claimant's RFC like other findings of fact, need only be supported by substantial evidence. *See Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013).

The ALJ need not specifically address every piece of evidence in the record, but must present a "logical bridge" from the evidence to his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. *Diaz*, 55 F.3d at 307. An ALJ's failure to discuss an entire line of evidence falls below the minimal level of articulation required. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). This includes an ALJ's failure to explain the rejection of a claimant's subjective complaints of pain, to discuss uncontradicted evidence, or to discuss unfavorable evidence. *Id.*

  a. Physical Limitations

The Court need not consider further Borkowski's contention that the ALJ failed to credit all of her physical limitations in the RFC determination. As the Commissioner states, Borkowski's argument as to her physical limitations "mostly recycles" her claims that the ALJ should have afforded greater weight to her subjective physical complaints of back, neck and shoulder pain. Doc. No. 27 at 11. *(citing Olson v. Colvin*, 551 F. App'x 868, 876 (7th Cir. 2014)). Borkowski's challenge in this regard is "inherently intertwined with matters of credibility." *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011). Having already determined that the ALJ's credibility determinations were not patently wrong, the Court is left with nothing further to review as to Borkowski's physical limitations.

  b. Mental Limitations

Separately, Borkowski contends that the ALJ failed to credit all of her mental limitations in the RFC. An ALJ's assessment of the claimant's mental RFC must be adequately explained and supported by substantial evidence. *Craft,* 539 F.3d at 677-78. Moreover, "an ALJ is free to

formulate his mental RFC assessment in terms such as 'able to perform simple, routine, repetitive work' so long as the record adequately supports that conclusion." *Kusilek v. Barnhard*, No. 04-C—310-C, 2005 WL 567816, at *4 (W.D. Wis. Mar. 2, 2005) (citing *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987).

In Borkowski's RFC, the ALJ concluded that she "has moderate limitations in maintaining concentration, persistence, or pace secondary to her depression and anxiety and is limited to simple, routine, repetitive tasks… limited to simple decision making, nor more than occasional and minor changes in the workplace or work setting, and simple judgment." Doc. No. 12 at 31. In support of this conclusion, the ALJ explained that Borkowski had not been treating any mental impairment for the majority of the relevant time period and that she only recently began seeing a counselor. Further, the ALJ explained that although Borkowski has complained of multiple nervous breakdowns in recent years, she has never been hospitalized for psychiatric reasons and has never attempted suicide. The ALJ also explained that he limited Borkowski to simple unskilled work in part because Dr. Silberman, a neurologist, opined that her symptoms are worsened by stress and that she does have some side effects from her medication.

Furthermore, the ALJ cited Borkowski's own testimony as evidence that counseling was helping and that her mental problems were for the most part under control. The ALJ also pointed out that Borkowski's own report that she is taking Ritalin, which allows her to think clearly. In addition, the ALJ relied on the fact that no treating psychological expert has indicated that Borkowski is disabled for psychiatric reasons and the State agency psychological consultant opined that Borkowski has no severe mental impairment that more than minimally impairs her ability to perform work activity. Lastly, and perhaps most markedly, the ALJ found Borkowski to be more limited than the state agency medical and psychological consultant and reflected this

15

greater limitation in the RFC. Based on those findings, the record supports the ALJ's conclusion that Borkowski is limited to simple, routine, repetitive tasks. *See Kuselik*, 2005 WL 567816, at *4. Thus, because the ALJ here built a bridge from the mental health evidence of record to the RFC conclusion, the mental limitations were sufficiently credited.

In sum, the ALJ's opinion demonstrates that he considered the entire record, including Borkowski's subjective allegations, the objective medical evidence, medical opinion evidence and other evidence, in finding that Borkowski is not disabled. The ALJ has articulated a logical bridge from the evidence to his conclusions. Thus, the RFC was supported by substantial evidence.

As a final note, Borkowski asserts that if the RFC was in error, then the instruction to the vocational expert must therefore also be in error. The Court need not address this Step Five argument, because the ALJ's RFC determination is not changed as the result of this opinion and order.

## III. CONCLUSION

The ALJ's credibility determination was not patently wrong and the ALJ sufficiently credited Borkowski's limitations. For the reasons stated above**,** this Court concludes that the ALJ's RFC determination is supported with substantial evidence. Thus, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 23rd Day of June, 2015.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge